IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jeffrey Atkins, | ) | Civil Action No.: 4:10-cv-01296-JMC |
|     Plaintiff, | ) | |
| | ) | |
|   v. | ) | |
| | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| Eric Holder, Attorney General, Federal | ) | |
| Bureau of Prisons, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

This matter is before the court on the Magistrate Judge's Report and Recommendation ("Report") [Dkt. No. 77] filed on August 10, 2012, recommending that Defendant's Motion for Summary Judgment [Dkt. No. 65] be granted. Plaintiff Jeffrey Atkins ("Plaintiff") brings this action against his former employer, the Federal Bureau of Prisons ("Bureau"), alleging disability discrimination claims for termination and failure to accommodate in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*;[1] racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000(e); and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §

---

[1] Plaintiff's Complaint asserted disability discrimination pursuant to the Americans with Disability Act ("ADA") 42 U.S.C. § 12101 *et seq*. However, a claim under the ADA will not stand against the United States. *See* 42 U.S.C. §§ 12111(2), 12111(5)(B); *Cassity v. Geren*, 749 F. Supp. 2d 380, 384 (D.S.C. 2010). For this reason, the Magistrate Judge analyzed Plaintiff's claim under the Rehabilitation Act, which uses the same standards and allows for the same analysis as under the ADA. *Id. See also Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

621 *et seq*. Plaintiff also asserts a state law cause of action for breach of contract, which was not included in the Bureau's summary judgment motion.

Plaintiff timely filed objections [Dkt. No. 81] to the Magistrate Judge's Report arguing that he presented genuine issues of material fact such that his discrimination claims should be submitted to a jury. For the reasons stated herein, the Bureau's Motion for Summary Judgment is granted, the Magistrate Judge's Report and Recommendation is accepted as stated herein, and Plaintiff's federal claims are dismissed with prejudice. The state law breach of contract cause of action is remanded to state court for further adjudication.

## LEGAL STANDARD

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

## FACTUAL BACKGROUND

Plaintiff is a fifty-year old African-American male, who worked as a correctional counselor at the Federal Corrections Institution Williamsburg, in Salters, South Carolina ("FCI"). His job was categorized as a law enforcement position due to the frequent and close interaction with prisoners and the accompanying exposure to potentially dangerous situations that the job entailed. Though the Bureau's position description described the correctional counselor position

2

as "mostly sedentary [with] some walking and moving throughout the unit and institution," the position also required the employee to respond to emergencies, participate in fog and escape patrol, and be prepared to use physical control of inmates when necessary. *See* Position Description, [Dkt. No. 36-4 at 6]. The position description further stated that these "correctional responsibilities precede all others required by this position and are performed on a regular and recurring basis." *Id.* at 2. In addition, Bureau policies required all employees with law enforcement positions to meet certain physical requirements, including walking up to one hour, standing up to one hour, the ability to perform self-defense movements, running an extended distance, carrying a stretcher with one other person, climbing stairs and lifting objects weighing twenty-five pounds. *See* Physical Requirements for Institution Positions, [Dkt. No. 38-23].

Between 2006 and 2009, Plaintiff experienced a number of medical problems that led his physicians to suggest time off and/or work restrictions. In May of 2006, Plaintiff's doctor recommended a two-month medical leave of absence due to sleep apnea, which caused severe drowsiness. In July 2006, Plaintiff's doctor recommended another month of medical leave due to Plaintiff's plantar fasciitis, commonly known as heel spurs. Plaintiff's doctor recommended an additional month of medical leave in August 2006. The record is unclear as to whether Plaintiff actually took medical leave between May 2006 and September 2006.

In June 2007, Plaintiff was treated for polyarthropathy, a type of arthritis, and his doctor recommended adjustments to his workload and training regimen for the next six months including the restriction that Plaintiff stand for no more than fifteen minutes at a time. In January 2008, Plaintiff was treated for achilles tendonitits, and his doctor recommended that Plaintiff be excused from squatting or standing for more than fifteen minutes at a time.

3

In February 2008, Plaintiff injured his knee at work. The physician at Dorn Veterans Administration Medical Center ("Dorn") who treated Plaintiff's injury diagnosed degenerative joint disease in the knee. He prescribed work restrictions limiting Plaintiff to standing for no more than five minutes at a time and limiting his walking from the parking lot to work with additional limitations that he not climb, push, pull or lift. These restrictions were received by Plaintiff's unit manager and forwarded to FCI's medical officer who opined in a March 2008 email to FCI's human resources director ("HR director") that Plaintiff could not perform his duties or any other "duties required in a correctional environment" under his physical restrictions. *See* Massa Opinion, [Dkt. No. 37-3]. Thereafter, Plaintiff began taking annual and sick leave.

In June 2008, Plaintiff filed an Equal Employment Opportunity (EEO) Complaint of Discrimination based on disability and retaliation, alleging that the Bureau failed to accommodate his physical limitations. The Department of Justice's Complaint Adjudication Office ("CAO") found no discrimination based on disability or retaliation.

Upon several re-evaluations in late April and early May of 2008, Plaintiff was cleared to return to work on light duty status. The treating physician prescribed physical limitations of no prolonged standing or walking and no kneeling, squatting, crawling or climbing multiple stairs. The HR director and Plaintiff's unit manager met with Plaintiff and advised him to continue his normal duties within those restrictions and specifically directed him to stand for no more than fifteen minutes. In June 2008, Plaintiff was seen at the Veterans Administration hospital for his lumbosacral disc disease and the treating physician recommended light duty status. Later that month, Plaintiff's knee injury was re-evaluated by a doctor at Dorn who also recommended light duty status with no prolonged standing or walking, no climbing, kneeling, squatting or crawling,

and no lifting more than forty pounds. The physician completed a form listing these restrictions along with the following comment: "This restriction is permanent." Report of Medical Examination, [Dkt. No. 37-14]. In August 2008, Plaintiff's psychologist submitted a letter to Plaintiff's unit manager diagnosing Plaintiff with Post Traumatic Stress Disorder ("PTSD"), which manifested itself through anxiety, depression and paranoia, as well as secondary symptoms, including difficulty sleeping, hyper-vigilance, irritability and angry outbursts.

On August 6, 2008, Plaintiff submitted a Request for Reasonable Accommodation seeking "work reassignment to an area and environment where the serious potential for violent act(s) and behavior against me by inmates is minimal" citing his "obvious disabilities [and] numerous unforeseen disabilities." [Dkt. No. 37-21]. Plaintiff's unit manager and FCI's HR director informed Plaintiff that more documentation would be necessary to support his request and that he would have to take leave until a decision was made on his request. A treating physician at Dorn submitted additional medical documentation to the Bureau citing Plaintiff's continued back and knee pain, which contributed to his difficulty lifting, stooping, and walking for any period of time, as well as the compounding effects of Plaintiff's PTSD.

On September 26, 2008, Plaintiff's unit manager wrote to Plaintiff and asked him to provide more specific information regarding his accommodation request, directing him to indicate the position he desired, the lowest grade he was willing to accept, and the geographical location in which he wanted to or was willing to work. The unit manager also referred Plaintiff to a website through which he could locate potential positions within the Department of Justice. Plaintiff claims that he responded to the letter but acknowledges that he failed to provide the specific information requested.

On October 27, 2008, Plaintiff's unit manager sent Plaintiff a termination proposal, which gave Plaintiff an additional fifteen days to provide any proposals for accommodations that would enable him to perform his job. In his response of December 9, 2008, Plaintiff (1) contested the Bureau's finding that his physical limitations prevented him from responding to emergencies; (2) alleged that the Bureau failed to engage in the required interactive process of finding a reasonable accommodation; and (3) further alleged that the Bureau discriminated against him on the basis of his race and his age by failing to grant him a reasonable accommodation. Plaintiff again failed to provide any proposals for accommodation.

On March 30, 2009, the warden at FCI sent Plaintiff a termination letter. In the letter, the warden defended the Bureau's participation in the interactive process of finding a reasonable accommodation by describing the efforts taken by Bureau staff and noting Plaintiff's failure to provide proposals for accommodation. The warden also cited the Dorn physician's most recent report listing Plaintiff's work limitations as permanent in support of his finding that Plaintiff could not safely perform the essential functions of any position at FCI. Additionally, the warden noted that he could find no positions at FCI where Plaintiff would not present a safety risk to himself or others.

In April 2009, Plaintiff filed a second Complaint of Discrimination alleging discrimination based on race, sex, age, and retaliation. In March 2010, the CAO issued its final decision finding no discrimination.

## DISCUSSION

**Summary Judgment Standard** [2]

---

[2] The Magistrate Judge outlined the appropriate legal standard for Summary Judgment in his Report and therefore, this court restates it here verbatim.

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts that show a genuine dispute for trial. Fed. R. Civ. P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Barber v. Hosp. Corp. of Am.*, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. *See Celotex*, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**Disability Discrimination**

The Magistrate Judge properly applied the *McDonnell Douglas* burden-shifting scheme in analyzing Plaintiff's discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc*, 53 F.3d 55, 57-58 (4th Cir. 1995) (applying the *McDonnell Douglas* scheme to claims brought under the Rehabilitation Act). Plaintiff does not object to the application of this test. Under the *McDonnell Douglas* approach, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. Once a *prima facie* case has been established, the burden shifts to the employer to present a legitimate, nondiscriminatory reason for its employment action. If the employer meets that burden, the burden shifts back to the employee to show that the given reason was mere pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Though the burden of production shifts between the parties, the burden of persuasion on the issue of discrimination remains on the plaintiff throughout. *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In this way, the burden of showing pretext "merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (quoting *Burdine*, 450 U.S. at 253). To meet his burden, the plaintiff must prove by a preponderance of the evidence that the employer's proffered non-discriminatory reasons for taking the adverse action were mere pretext for discrimination. *Id.*

Plaintiff does not dispute the Magistrate Judge's legal framework for making a *prima facie* showing in a failure to accommodate case. A plaintiff establishes that an employer failed to accommodate him if he can show (1) that he is disabled within the meaning of the statute; (2) that the employer had notice of the disability; (3) "that with reasonable accommodation [the employee] could perform the essential functions of the position;" and (4) that the employer failed to make the accommodation. *Rhoads v. FDIC,* 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999).

Plaintiff also accepts the Magistrate Judge's legal framework for presenting a claim of disparate treatment under the Rehabilitation Act. A plaintiff establishes a *prima facie* case for disparate treatment by showing (1) that he was an individual with a disability; (2) that he was otherwise qualified for the job in question; and (3) that he suffered an adverse employment action because of his disability. *Edmonson v. Potter*, 118 F. App'x 726, 728 (4th Cir. 2004) (citing *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997)). In this analysis, "the term 'qualified' with respect to an individual with a disability means that the individual satisfies the requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m)(2011); *see also* 29 C.F.R. § 1630.2(n) (2011) (defining essential functions). For both of these claims, then, Plaintiff's *prima facie* case requires a showing that he could perform the essential functions of his position with or without a reasonable accommodation.

Plaintiff objects to the Magistrate Judge's finding that Plaintiff could not perform the essential functions of his job and was, therefore, not qualified within the meaning of the statute. The Magistrate Judge determined that Plaintiff's physician-imposed work restrictions explicitly and implicitly prevented Plaintiff from performing the essential functions of his job as described

9

in the Correctional Counselor Position Description and as required by the Bureau's physical requirements. Plaintiff also argues the Magistrate Judge erred in construing the physical limitations mandated by his physicians to be permanent[3] and that, had the Bureau offered him a reasonable and temporary accommodation, Plaintiff could have returned to his job. Whether his conditions would have improved such that he could have performed the essential functions of his job is mere speculation. While some of Plaintiff's conditions were degenerative and by definition would get worse over time, it is also true that Plaintiff's physician-imposed work restrictions were reduced slightly between the time immediately after his original knee injury and the time of the Bureau's termination decision. However, none of his restrictions were reduced to the point that Plaintiff would have been able to perform the essential functions of his job. Plaintiff's ongoing physical limitations included no climbing, no prolonged standing or walking, no lifting or carrying greater than forty pounds and no kneeling, squatting or crawling. These restrictions, or ones very similar, had effectively been in place since June 2007. Moreover, Plaintiff's various physicians all prescribed light duties since that time. For these reasons, the Magistrate Judge found that Plaintiff could not perform the essential functions of the job.

Plaintiff further argues that the Magistrate Judge erred in finding that even with a reasonable accommodation, Plaintiff could not have performed the essential functions of his job.

---

[3] Plaintiff argues that the last medical exam issued before he was terminated, which included the phrase, "these restrictions are permanent," was misunderstood by the Bureau. *See* Report of Medical Examination [Dkt. No. 37-14.] Plaintiff alleges that his physician meant merely that the knee condition was permanent. To support this position, Plaintiff points to a letter from his physician responding to FCI's HR director seeking clarification about Plaintiff's condition. *See* Response to July 31 Letter, [Dkt. No. 37-19.] In the letter, the physician reports on the current state and prognosis of Plaintiff's knee condition but refuses to comment on Plaintiff's spinal condition. The letter does not, however, refute the physician's earlier statement that Plaintiff's physical restrictions were permanent. Moreover, the letter states that Plaintiff "will need actual limitations for the knee both on and off the job."

The Magistrate Judge analyzed Plaintiff's official accommodation request, which sought reassignment "to an area and environment where the serious potential for violent acts . . . is minimal." DOJ Form 100A [Dkt. No. 21-42]. The Magistrate Judge found that such an accommodation if granted would have eliminated an essential function of Plaintiff's position, namely the extensive contact with inmates that is inherent in the correctional counselor position. Plaintiff fails to present any additional evidence on this point to create an issue of fact as to whether he could have performed the essential functions of his position with the accommodation he requested.

The court finds that the Magistrate Judge correctly determined that Plaintiff was unable to perform the essential functions of his job with or without accommodation. As a result, Plaintiff fails to present sufficient evidence to establish a *prima facie* case for discriminatory treatment under the Rehabilitation Act.

Even if Plaintiff could demonstrate a *prima facie* claim for disparate treatment, he would have to demonstrate that the Bureau's decision to terminate him was mere pretext for another illegitimate and discriminatory reason. The Bureau claims its decision to terminate Plaintiff was based on its finding that he was no longer able to perform the essential functions of his job. The Bureau's determination is consistent with the Bureau's policies and the position description of correctional counselor. In addition, the Bureau can point to sufficient documentation that Plaintiff's physical limitations and his ability to perform his job were an ongoing concern among FCI's human resources, medical, and managerial staff. This included an assessment that Plaintiff's light duty assignment was causing a hardship on the management of his unit. As a result, the Bureau has satisfied its burden of showing a legitimate and nondiscriminatory reason for Plaintiff's termination.

At this point in the analysis, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the employer's stated reason for taking the adverse action is illegitimate. Plaintiff points to the Bureau's allegedly wrongful determination that Plaintiff's physical limitations were permanent as proof that the Bureau's asserted reason for termination was not its real reason. However, the Bureau was not unreasonable in interpreting Plaintiff's work restrictions as permanent. Even if a factual question exists regarding whether Plaintiff's physician considered Plaintiff's work restrictions permanent, this alone does not demonstrate that the Bureau's stated reason to terminate him was illegitimate or discriminatory. At most, it would demonstrate that the Bureau's decision to terminate was based on a misinterpretation of Plaintiff's record. However, the correctness of the employer's decision is not the crucial inquiry in discrimination cases. It is not the role of the court "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for Defendant's decision." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000). Here, Plaintiff cannot show that the Bureau's stated reasons for terminating him was not its real reason, even if Plaintiff could show that the Bureau's asserted reason was based on an erroneous assumption.

Plaintiff also argues that the Magistrate Judge erred in finding that the Bureau fulfilled its duty to engage with Plaintiff in the required "interactive process" of seeking a reasonable work accommodation within Plaintiff's work restrictions. *See* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation, it may be necessary for the employer to initiate an informal interactive process with the individual with a disability."). There is evidence in the record to show that the Bureau did engage with Plaintiff to find a reasonable accommodation. Specifically, Plaintiff's supervisor requested by letter that Plaintiff provide information about acceptable alternative positions, the lowest grade he was willing to accept, and

his preferred location of work. This request for Plaintiff's specific preferences was reiterated in the Proposal of Termination, which gave Plaintiff one final opportunity to suggest some accommodations that might prevent his termination. Plaintiff, on the other hand, failed to provide any answers to these requests, which suggests that he was not engaged in the process in a good faith manner.

Moreover, as the Magistrate Judge points out, to prevail on a failure to accommodate theory, Plaintiff would need to show that a reasonable accommodation was possible and would have led to a reassignment position. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999). The warden's termination letter stated that there were no positions at FCI that would accommodate Plaintiff's physical restrictions. Plaintiff did not then, and has not now, shown an available reassignment position that would refute the warden's claim. For this reason, Plaintiff has presented no genuine issue of material fact that would allow him to establish a *prima facie* case for failure to accommodate on the grounds that the Bureau did not engage in the interactive process.

**Title VII and ADEA Claims**

Plaintiff also objects to the Magistrate Judge's conclusion that Plaintiff failed to present genuine issues of material fact that would establish his racial discrimination claim under Title VII and his age discrimination claim under the ADEA.

Title VII makes it "an unlawful employment practice for an employer to . . . discharge an individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000(e)-2(a)(1). Similarly, the ADEA makes it unlawful for an employer "to discharge an individual or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Plaintiff does not object to the Magistrate Judge's formulation of the requirements for demonstrating a *prima facie* case of discrimination under either Title VII or the ADEA. To establish a *prima facie* case under either Title VII or ADEA, a plaintiff must show (1) membership in a protected class; (2) a satisfactory job performance; (3) an adverse employment action; and (4) that similarly situated employees outside the plaintiff's protected class received more favorable treatment. *See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (Title VII); *Hill v. Lockheed Martin Logistics Mngmt., Inc.*, 345 F.3d 277, 285 (4th Cir. 2004) (ADEA). Claims for discrimination based on race or age are analyzed under the *McDonnell Douglass* burden-shifting scheme employed above. *See McDonnell Douglas Corp.*, 411 U.S. at 803; *Hill* 354 F.3d at 285.

Plaintiff first alleges error in the Magistrate Judge's finding that Plaintiff failed to establish the existence of similarly situated employees. In order for an employee to be similarly situated, "a plaintiff must establish that 'other employees' were similarly situated in all relevant respects [including] that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ward v. City of N. Myrtle Beach,* 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)); *see also Burdine v. Greenville Technical Coll.*, C.A. No. 6:08-cv-03764-JMC, 2010 WL 5211544 (D.S.C. Dec. 16, 2010).

Plaintiff offered four employees who were outside of his protected class who he argues are similarly situated. The Magistrate Judge found only one of the four comparators, Melanie

14

Varro, a white female case manager, to be similarly situated under this District's standard because she was the only comparator offered that was shown to be under the same supervisor as Plaintiff. The Magistrate Judge promptly distinguished Plaintiff from Ms. Varro who testified that 90% of her job was paperwork that she could perform outside of the prison unit without her temporary reassignment impacting her ability to perform the essential functions of her job. The Magistrate Judge also noted that her accommodation lasted for only two months, whereas Plaintiff's disability was long-term, if not permanent, and his accommodation request was interpreted as a request for a permanent reassignment.

Plaintiff argues for a more expansive view of similarly situated employees, suggesting that despite having different jobs within the facility, all four of the employees he put forward answered to the same "ultimate supervisors" as Plaintiff and that three of the four had "essentially the same levels of inmate interaction." [Dkt. No. 81 at 12-13]. Even under this expansive view, two of Plaintiff's comparators would likely still not be considered similarly situated. Michael Shoemaker, a white male who had been accommodated on several occasions, was an electrician at FCI. Plaintiff admits that Shoemaker had less interaction with prisoners than Plaintiff, so he cannot be considered similarly situated. Plaintiff also puts forward Juan Corzo, a Hispanic male in a unit manager position, who received accommodation. Unit mangers are superior to corrections counselors and by definition, have different duties. It is unlikely that a person in a supervisory position and a person in a subordinate position could be similarly situated. Finally, Plaintiff puts forth Officer Jacobs, a white male corrections officer who was temporarily relocated and allegedly exempted from having to respond to certain emergencies. The Magistrate Judge, basing his analysis on who supervised the comparators, found no information in the record about Officer Jacobs's chain of command. In the exhibits attached to

his objection, Plaintiff clarified that Officer Jacobs had a different immediate supervisor than Plaintiff. Examining this comparator under Plaintiff's broader view, sufficient evidence is lacking to make a more meaningful comparison. Plaintiff testified that he believed Officer Jacobs's injury was "first allegedly cancer and then something about his back, I believe." Deposition of Jerry Atkins, [Dkt. No. 36-5, at 49: 22-25]. Plaintiff's union representative also testified that Officer Jacobs was on light duty for more than a year, but he did not know Officer Jacobs's condition. Deposition of M. Shoemaker, [Dkt. 66-7, at 69: 24-25 – 70: 1-2]. The exhibit attached to Mr. Shoemaker's deposition lists "cancer" and "back" as his injuries. Deposition of M. Shoemaker, [Dkt. 66-7, Exhibit 6]. Such evidence is vague and insufficient to determine how and whether Officer Jacobs's situation was comparable to that of Plaintiff.

Plaintiff also argues that the Magistrate Judge erred in finding that Plaintiff did not present sufficient evidence to raise an inference of discrimination, which Plaintiff argues could also demonstrate Plaintiff's *prima facie* case. Plaintiff puts forward two witnesses – a past employee and a present employee of FCI – both of whom testified that they believed race played a part in Plaintiff's alleged disparate treatment. The witnesses' statements were based on the fact that Plaintiff was not offered an accommodation for his injuries where as others at the institution, "mostly Caucasian males or management" were accommodated and continued working. *See* Turner Deposition, [Dkt. No. 66-8, p. 56 – 57]. These witnesses present little more than belief, conjecture and speculation that race played any role in Plaintiff's alleged disparate treatment.

The court finds that the Magistrate Judge properly distinguished Plaintiff and his suggested comparators under the prevailing law in this District. Moreover, the testimony of two FCI employees who speculated that the Bureau's decision was based on race is insufficient to raise an inference of discrimination and thus, not sufficient to survive summary judgment.

However, even if Plaintiff had proved his *prima facie* case through the use of comparators or some other means, he would have still needed to demonstrate that the Bureau's stated reason for terminating the employee was illegitimate and discriminatory. Plaintiff once again claims that his termination was based on the Bureau's allegedly erroneous finding that Plaintiff's work restrictions were permanent. As discussed above, disagreement or confusion as to the permanency of Plaintiff's work restrictions does not demonstrate that the Bureau's reasoning was discriminatory, only that it was potentially flawed. For this reason, Plaintiff cannot meet his burden of proving that discrimination based on age or race motivated the Bureau's decision.

**IV. Retaliation**

Plaintiff also objects to the Magistrate Judge's finding that Plaintiff failed to proffer sufficient evidence to show that the Bureau's real reason for terminating him was in retaliation for two EEO complaints he made against the Bureau. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000(e)-3(a). An employee can establish a *prima facie* case of retaliation by showing (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal connection between the protected activity and the adverse employment action. *King v. Rumsfeld*, 328 F.3d 145, 150-151 (4th Cir. 2004). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to establish a non-retaliatory reason for the adverse actions. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reason offered was pretextual. *Matvia v.Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

Plaintiff does not object to the Magistrate Judge's legal framework. He does disagree with the Magistrate Judge about whether sufficient evidence exists to demonstrate a causal link between Plaintiff's EEO complaints and the Bureau's adverse actions against him. Plaintiff alleges three adverse actions made by the Bureau following his EEO complaint filed on June 10, 2008: (1) that the safety manager at FCI, Mr. Bink, failed to properly file Plaintiff's Workers Compensation paperwork; (2) that Plaintiff was denied a reasonable accommodation; and (3) that the Bureau wrongfully terminated him.

The Magistrate Judge found no evidence that Mr. Bink maliciously failed to file Plaintiff's paperwork on time. Nor was evidence submitted that Mr. Bink was aware of Plaintiff's EEO complaint. "[K]nowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third factor of the *prima facie* case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In addition, the Magistrate Judge found insufficient the testimony of FCI employee, Turner, who testified about Mr. Bink's alleged failures in a deposition that "the only thing I can think is they're discriminating against [Plaintiff] for his EEO activities." Deposition of William Turner, [Dkt. No. 66- 8, at 56]. This statement is pure conjecture and, presented alone, is not sufficient to establish a question about Mr. Bink's motives.

The Magistrate Judge also found that the nine-month passage of time between Plaintiff's EEO Complaint and his actual termination negated any causal connection between the two events based on timing alone. Plaintiff objected, stating that the "formal and informal intent to terminate [Plaintiff] arose much earlier and the steps to achieve the same were taken well prior to his supervisor's recommendation." [Dkt. No. 81 at 17-18]. Allegations that Bureau staff

maintained an ongoing intent to terminate Plaintiff is speculative at best and presumes the discriminatory intent that Plaintiff has thus far failed to prove. Plaintiff's temporal proximity argument is flawed as well. There were at least four months between the filing of Plaintiff's first EEO complaint and the proposal to terminate dated October 27, 2008. Until that point, and for fifteen days after, Plaintiff had the opportunity to reply with specific accommodations that he believed would enable him to perform his duties. He was not actually fired until five months later in March 2009. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, (2001) *citing Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient), *Hughes v. Derwinski,* 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (four-month period insufficient); *see also Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x. 229, 233 (4th Cir. 2006) (per curiam) (unpublished opinion) (finding a three-to-four-month period between the protected activities and the employee's termination to be too long for purposes of establishing a causal link). In this case, a four-month period between the EEO complaint and Plaintiff's termination is probably too long a period of time to establish a causal connection based on temporal proximity alone. Nine months almost certainly is. For the reasons stated above, Plaintiff's claim of having presented substantial other evidence illustrating the causal connection cannot stand. As a result, Plaintiff fails to make out his *prima facie* case for Title VII retaliation.

Even if Plaintiff were able to establish a *prima facie* case of retaliation, he again fails to demonstrate that the actions taken by the Bureau were illegitimate or otherwise discriminatory, as discussed in detail above.

## CONCLUSION

For these reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation [Dkt. No. 77]. Accordingly, Defendant's Motion for Summary Judgment [Dkt. No. 65] is **GRANTED.** The remaining state law breach of contract claim is remanded to the Court of Common Pleas, Williamsburg County.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

September 24, 2012
Greenville, South Carolina